■ DONNA S. FRIEDMAN, Respondent, v JEFFREY L. FRIEDMAN, Appellant. [38 NYS3d 583]—

Appeal by the defendant from an order of the Supreme Court, Nassau County (Edward A. Maron, J.), dated March 20, 2014. The order, insofar as appealed from, (a) denied those branches of the defendant's motion which were, in effect, to modify the parties' stipulation of settlement so as to require the plaintiff to pay 100% of the college expenses of the parties' eldest child above the amounts available in certain custodial accounts, or, in the alternative, for a determination that his pro rata share of those expenses was 78% and the plaintiff's pro rata share was 22%, and (b) granted those branches of the plaintiff's cross motion which were, in effect, for a determination that the defendant's pro rata share of those expenses was 100%, and for an award of an attorney's fee.

Ordered that order is affirmed insofar as appealed from, with costs.

The parties, who are both attorneys, married in 1990 and had two children. In June 2007, the parties entered into a stipulation of settlement (hereinafter the stipulation) which was incorporated, but not merged, into the parties' judgment of divorce entered April 14, 2008. The stipulation provided that the defendant would pay maintenance to the plaintiff in the sum of $10,000 per month for four years, or until the plaintiff's remarriage or the death of either of the parties, and he would pay child support in the sum of $4,000 per month as long as the plaintiff continued to receive maintenance. After the maintenance obligation terminated, the defendant would increase his child support payment to $5,500 per month.

The parties agreed that the children's college education expenses would be financed by specified "custodial accounts currently maintained for their benefit, as well as any future accounts that may be established for their benefit," but if the college costs exceeded the amount in the custodial accounts, "the parties shall contribute to the remaining cost of the children's education on a pro-rata basis based upon their respective incomes." The parties further agreed to "meet and jointly discuss the selection of college for each child and, with input from the child, agree on the selection of a college for each child."

In August 2009, the plaintiff remarried, which terminated the defendant's maintenance obligation. Although the plaintiff was a licensed attorney, she had stopped working during the parties' marriage, and she remained unemployed after the par-

ties' divorce because her new husband was the source of financial support for her family.

The instant appeal concerns the parties' respective obligations for the college expenses of their older child (hereinafter the child). In the fall of 2012, the child started his senior year of high school and began the college application process. In October 2012, the plaintiff's attorney sent the defendant a letter informing him that the child was considering applying to Skidmore College (hereinafter Skidmore). She stated that the child had already visited Skidmore and thought it was a good fit for him, but he was planning additional college visits. She noted that the defendant had "insisted that [the child] apply to SUNY schools," but stated that nothing in the parties' stipulation or judgment of divorce required him to do so. She gave the defendant the contact information for the child's guidance counselor, and said that the plaintiff welcomed the opportunity to meet with the defendant and the counselor to discuss the child's college choices.

On December 4, 2012, the plaintiff's attorney sent the defendant an email stating that the child was planning to apply to Skidmore, which was his first choice, as well as several other private colleges. On December 11, 2012, the child's guidance counselor sent both parties an email regarding the child's college choices. She noted that she had recently met with both of the parties individually, but that they had not met together as a group. The defendant had asked whether a public school had been added to the list of college choices. The guidance counselor said that SUNY Purchase was the public school that most closely matched the child's interests, but she and the child had decided that it would not be the best fit for him.

The child ultimately applied to eight colleges, including Skidmore and SUNY Binghamton. After he was accepted to Skidmore through the early admission process, he was required to enroll there, which he did.

In June 2013, a few months before the child was scheduled to begin at Skidmore, the defendant moved, inter alia, in effect, to modify the parties' stipulation so as to require the plaintiff to pay 100% of the college expenses above the amounts available in the custodial accounts, or, in the alternative, for a determination that his pro rata share of those expenses was 78% and the plaintiff's pro rata share was 22%. He argued that the plaintiff should be required to pay all of college expenses exceeding the amount available in the custodial accounts since she had violated the stipulation by failing to comply with the terms regarding prior consultation and agree-

ment regarding the child's college choice. The defendant argued that the plaintiff had purposely excluded him from the child's college selection process. He also argued that his contribution should be limited by a "SUNY cap." The defendant also asserted that, when the parties entered into the stipulation, the plaintiff was planning to return to the work force, and he had agreed to share pro rata the college expenses exceeding the amount available in the custodial accounts based on his understanding that the plaintiff would find employment. He therefore argued that $100,000 in annual income should be imputed to the plaintiff, and that his annual income was $443,593, so that his pro rata share of those expenses was 78% and the plaintiff's pro rata share was 22%.

The plaintiff opposed the defendant's motion and cross-moved, inter alia, in effect, for a determination that the defendant's pro rata share of the college expenses above the amounts available in the custodial accounts was 100%. She also sought an award of an attorney's fee. The plaintiff argued that the defendant did not have any discussions with the child about his college choice. She also argued that the defendant's pro rata share of the additional college costs was 100% because she did not work and her only income in 2012 was $1,087 in interest and dividend income. The plaintiff asserted that her current husband supported the family financially, but he should not have to pay the child's college costs. The plaintiff further argued that both she and the defendant had attended private colleges and law schools (*cf. Halligan v Wesdorp*, 264 AD2d 466, 467 [1999]), the stipulation did not provide for a SUNY cap, and Skidmore was a good fit for the child.

The plaintiff also argued that, contrary to the defendant's contention, $100,000 should not be imputed to her as annual income because the stipulation did not provide for imputation of income and she had never earned $100,000 per year. She further argued that, although she had earned $70,000 per year when she did work, it was unlikely that she would be able to find work as an attorney now because she had not been in the work force for 13 years.

The Supreme Court denied the defendant's motion and granted those branches of the plaintiff's cross motion which were, in effect, for a determination that the defendant's pro rata share of the child's college expenses above the amounts available in the custodial accounts was 100%, and for an award of an attorney's fee. The defendant appeals.

Contrary to the defendant's contention, the Supreme Court properly concluded that he did not establish any basis to modify

the stipulation or the judgment of divorce (*see generally Matter of Brescia v Fitts*, 56 NY2d 132 [1982]). Further, we find no reason to disturb the court's determination that the plaintiff sufficiently complied with the terms of the stipulation requiring the parties to "meet and jointly discuss the selection of college for each child and, with input from the child, agree on the selection of a college for each child" (*see Gretz v Gretz*, 109 AD3d 788, 789 [2013]; *Matter of Sebastiani v Locatelli*, 11 AD3d 701, 701 [2004]; *Regan v Regan*, 254 AD2d 402, 403 [1998]; *cf. Halligan v Wesdorp*, 264 AD2d 466, 467 [1999]).

Contrary to the defendant's contention, the Supreme Court did not err in rejecting his request to impose a SUNY cap on his obligation because neither the stipulation nor the judgment of divorce made reference to a SUNY cap (*cf. Balk v Rosoff*, 280 AD2d 568, 569 [2001]; *Halligan v Wesdorp*, 264 AD2d at 467; *see generally Matter of Heinlein v Kuzemka*, 49 AD3d 996, 998 [2008]).

Additionally, the Supreme Court properly denied that branch of the defendant's motion which was, in the alternative, for a determination that his pro rata share of the college expenses was 78% and the plaintiff's share was 22%, and granted that branch of the plaintiff's cross motion which was, in effect, for a determination that the defendant's pro rata share was 100%. A separation agreement that is incorporated, but not merged, into a judgment of divorce is a legally binding independent contract between the parties which must be interpreted so as to give effect to the parties' intentions (*see Matter of Gravlin v Ruppert*, 98 NY2d 1, 5 [2002]). Here, the parties' stipulation specifically provided, in pertinent part: "[T]he parties agree that the children's college education expenses . . . shall be financed by the custodial accounts currently maintained for their benefit, as well as any future accounts that may be established for their benefit. . . . *If the children's college education costs exceed the amount of the respective custodial accounts, the parties shall contribute to the remaining cost of the children's education on a pro rata basis based upon their respective incomes*" (emphasis added). Thus, pursuant to the express terms of the stipulation, after the amounts available in the custodial accounts were extinguished, the parties were required to contribute to the children's additional college costs on a pro rata basis (*see generally Matter of Heinlein v Kuzemka*, 49 AD3d at 998). Moreover, as the stipulation did not include operative language as to whether the parties would maintain employment and there was no dispute that the plaintiff was unemployed, the court did not err in concluding that the plaintiff's pro rata share of the additional college costs was 0%.

Additionally, under the circumstances of this case, the Supreme Court did not improvidently exercise its discretion in awarding an attorney's fee to the plaintiff (*see generally* Domestic Relations Law § 237 [a]; *Chaudry v Chaudry*, 95 AD3d 1058, 1059 [2012]; *Regan v Regan*, 254 AD2d at 403). Mastro, J.P., Dillon, Hinds-Radix and Maltese, JJ., concur.